# Hambleton's Appeal.

1. Where the estate of a lunatic is ample to maintain him and his household in the manner he had chosen for himself before his lunacy, and such maintenance is best adapted for his comfort and ease after his lunacy, the court should authorize the committee to expend a sufficient amount of the lunatic's estate for that purpose.

2. An old man, a widower and without children, having a large estate, took a nephew and his family to live with and take care of him and his estate, paying the nephew a salary, and supporting the nephew and his family as part of his household. Subsequently he became afflicted with senile dementia, though retaining sound physical health, and he was adjudged a lunatic. A committee of his estate was appointed by the court, and the said nephew was appointed committee of the person. The latter fulfilled his duties satisfactorily, and, by order of court, received from the committee of the estate a sufficient monthly allowance to continue the household in the same manner as before the lunacy and also to pay his salary as before. Upon the audit of his account, the auditor and the court surcharged him with one-half the cost of food for the household, and the wages of one servant:

*Held*, that the committee had done that which it might reasonably be supposed the lunatic would have continued to do if he had retained his sanity, and which was apparently best adapted to the peace and comfort of the lunatic; and it was error, therefore, to surcharge the accountant with any part of the cost of so maintaining the lunatic's household, including the committee himself, and his family.

January 3d 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

APPEAL from the Court of Common Pleas No. 4. of *Philadelphia county :* Of January Term 1882, No. 344.

This was an appeal by Neal Hambleton, committee of the person of William Neal, a lunatic, from a decree of said court, dismissing his exceptions to the report of an auditor appointed

to audit, settle and adjust the account of said committee, and confirming the report.

Before the auditor the facts appeared to be as follows :—In proceedings in lunacy, in 1877, William Neal was found to be a lunatic and to have been such without lucid intervals for the space of one year prior to the date of the inquisition, October 23d 1877. At that time his estate consisted of personalty valued at $101,000, and of realty valued at $9,000. He was 83 years of age, in sound physical health, and without mental hallucinations, but afflicted with senile dementia and loss of memory. His wife died in 1875, and he had no children. His nearest relatives were nephews and nieces. For many years he had resided in his own house, he lived comfortably and kept two servants. As long ago as 1863, he had written to his nephew, Neal Hambleton, who lived in Chicago, urging him to come and live with him, and subsequently often repeated that request. In 1876, Neal Hambleton with his wife and two children, yielded to Mr. Neal's request and went to live with him, under the arrangement that Neal Hambleton should receive a salary of $1,500 a year, for taking care of his estate. From that time Hambleton and his family were supported by Mr. Neal, as members of his household. After the inquisition in lunacy the Provident Life and Trust Company was appointed committee of Mr. Neal's estate, and Neal Hambleton was appointed committee of his person ; the latter entered security, as required, in the sum of $8,000.

After this appointment, the household was kept up in the same manner as before, and the court from time to time made orders authorizing the committee of the estate to pay to the committee of the person the sum of $300 per month, for salary, expenses, and maintenance, &c., and on December 9th 1878, a permanent order was made for the payment by the committee of the estate, to the committee of the person, of $300 on the first day of each month " for the support and care of the person, and to defray the household expenses of the said lunatic."

Shortly after the appointment of Neal Hambleton as committee of the person, a nephew and a niece of the lunatic, on petition, obtained a rule to show cause why said Neal Hambleton should not be dismissed as committee. The matter was referred to an auditor, who took voluminous testimony, and reported that there was no ground for his dismissal, but that, on the contrary, he fulfilled his duties as committee in a praiseworthy manner. The said rule was discharged.

In 1880, on petition of a nephew and a niece of the lunatic, the court ordered Neal Hambleton to file an account as committee, which was filed and referred to an auditor. The accountant charged himself with the total sum received by him.

$8,700, and claimed credit for salary at $1,500 a year, $3,625, and household and other expenses, as per itemized account, $5,072.35; total, $8,707.35, thus showing a balance of $7.35 in favor of the accountant. The auditor reported that he "does not consider that the family of the accountant should be supported from the estate of the lunatic, and the accountant, at the same time, receive a salary of $1,500 a year as committee; further, that although William Neal had kept two servants previous to Neal Hambleton's coming to his house, still one servant, besides the committee, would be sufficient to attend on the lunatic, and that the other servant should be properly chargeable to the accountant personally." The auditor therefore surcharged the accountant with the wages of one servant, $300, and one-half the actual household expenses for food, &c., viz., $1,441.83, thereby bringing the accountant in debt to the estate in the sum of $1,734.48.

Exceptions filed by the accountant to the auditor's report were overruled by the court (no opinion filed), whereupon the accountant took this appeal, assigning for error the dismissal of his exceptions and the confirmation of the auditor's report.

*J. Cooke Longstreth*, for the appellant, insisted that the prior order of the court, making an allowance of $300 per month, was an adjudication that the expenses for which the auditor had surcharged the accountant were proper items to be paid out of the estate; and that, independent of such order, they were proper credits under the circumstances; citing Act of June 13th 1836, Purd. Dig. 983, pl. 23; Shelford on Lunatics 152, 156; Ex parte Whitbread, 2 Mer. 99.

*R. P. White*, for the appellees.—The auditor naturally thought that when a committee of the estate was appointed to attend to the duties for which Neal Hambleton formerly received a salary of $1,500, and Hambleton afterwards continued to take his salary of $1,500 as committee of the person, he could not be allowed, in addition, the entire cost of maintaining himself and his family at the lunatic's expense. The surcharge of the wages of one servant, and only one-half the cost of victuals, was more favorable to the accountant than he had a right to expect. He put his claim on the plea of bounty, but under the circumstances of the weak-minded condition of Mr. Neal, long prior to the inquisition, and the confidential relation, and probably unbounded influence of Hambleton over him, the burden of proof is on him to show that he took no undue advantage of the old man in making the arrangement of salary for himself and support for his family, which arrangement he continued after the lunacy, and after he had been

[Hambleton's Appeal.]

relieved of the bulk of his work :   Greenfield's Estate, 2 Harris 489 ; Wright *v.* Proud, 13 Ves. 136 ; Kerr on Fraud 193 ; In re Willoughby, 11 Paige Ch. 257.

Mr. Justice GORDON delivered the opinion of the court, January 22nd 1883.

It was the duty of the court of Common Pleas to appropriate, in accordance with the directions of the Act of Assembly, so much of the income of the estate of William Neal, the lunatic, as might be sufficient, not only for his own support, but also for the support of his family, and as the income of his estate was ample, sufficient to meet any demand that might be reasonably made upon it, so should the allowance have been large enough to meet both his and their wants. Under such circumstances, it is not the business of the court to arbitrarily interfere and determine who shall constitute the lunatic's family, or what shall be its appointments, for, ordinarily, these things have been previously fixed and settled by the lunatic himself at a time when he had both the power and ability to adjust his own affairs. But of the family of William Neal, and its appointments and surroundings, the court had, through its master, on the rule to show cause why the appointment of the appellant, as committee of the person of the lunatic, should not be vacated, fully informed itself. About his report there is no ambiguity ; its language is clear and definite, and it speaks from facts so certain and full that nothing is left in obscurity. At the earnest and long continued solicitation of Neal, the appellant had agreed that himself and his wife and children should form Neal's family. In order to meet the wishes of his uncle, in this particular, and devote himself exclusively to his uncle's interests, he was obliged to give up a lucrative business in which he was then engaged, and, as a compensation for this sacrifice, he was to receive a salary of fifteen hundred dollars a year. All these matters were thus settled by Neal, when of sound mind, to his own satisfaction and for his own welfare and protection in his old age, and to minister to the comfort and convenience of his family, thus formed, he had employed two servants. Such were William Neal's surroundings when he became the ward of the court. That they were reasonable, and that the cost of them was entirely within the income of his estate, are not matters of dispute. What, then, under the circumstances, was the duty of the court ? We answer, simply to maintain and carry forward the affairs of William Neal as they were when his mind failed him ; to do that which it might reasonably suppose he would have continued to do had he retained his sanity. This is the rule as expressed in Elwyn's Ap., 17 P. F. S. 367, and in Ex parte Whitbread, 2 Mer. 99, and it is certainly a

sound and just one. It must not be forgotten that the court is administering the lunatic's own estate, and that his personal comfort and welfare are the prime objects which are to be kept in view, and not the welfare of his next of kin. We can easily understand, that where the dementia, as in the present case, is of that mild form called "senile," or that which results from old age and loss of memory, the comfort of the subject of it can ordinarily be best provided for by continuing for him that condition of things which he, when sui juris, had established for himself; for although the memory has become feeble and treacherous, old habits and old associations still continue to exert their influence in adding to the peace and comfort of the old man's life. It follows, that the court having charge of the lunatic, should, as far as possible, maintain the circumstances which have produced those habits and associations, forasmuch as they tend so materially to the welfare of its ward.

In the case Ex parte Whitbread, supra, it was said, that for a long series of years the court of chancery had been in the habit, in questions concerning the property of the lunatic, to consult those who were nearest of blood, because they were more likely to be able to give the required information concerning it. But that it had become too much the practice that, instead of such persons confining themselves to the duty of helping the court by their advice and management, there was a constant struggle amongst them to reduce the amount of the allowance made for the lunatic, and in this manner enlarge the fund which one day might devolve upon themselves. It must certainly have been some such influence as this, a desire to save the property of the lunatic for the next of blood, that induced the court to interfere with Neal's family arrangements, and cut down its own allowance by the surcharge of half the price of the victuals of that family, and the wages of one servant. If this were not the moving cause for this surcharge, we know not what it was. There were certainly no such material changes in either the necessities, household or estate of the lunatic, as should have induced such action on part of the court. If, however, any such influence were allowed to have a controlling force over the judicial action, it was a mistake, for it was Neal's own welfare, and not that of his kindred, that ought to have been consulted. Moreover, it was singularly unjust to the committee, to first direct, after a careful examination of the whole subject, that he should have three hundred dollars a month to spend upon his insane uncle and family, and then, after he had spent it, as we may say, in the very manner directed by the court, surcharge him with no less than seventeen hundred and thirty-four dollars of that fund.

Undoubtedly, it was not only the right, but the duty of the

court to call the committee to an account; but when, by that account, it became apparent that the fund appropriated for that purpose had been expended in that manner in which it might well be supposed Neal would have spent it had he been of sound memory, the conduct of the committee should have been approved. It is indeed true, as the auditor has said, Neal did not stand in loco parentis to his nephew and family; in other words, he could not legally have been compelled to contribute to their support, but a principle of that kind does not enter into the question before us. We look only to the lunatic's disposition of things when sane. As we have already said, his family, without regard to mere relationship, was that which he had established for himself, and with it the court had no right to interfere except for good cause shown. Not only, however, does no such cause appear, but the contrary ; reasons many and obvious are apparent from the master's report, why the affairs of Neal should have been permitted to remain as the court found them, and why the report of the committee should have been approved.

We now order and direct that the decree of the court below be reversed and set aside at the costs of the appellees ; that the exceptions to the account of Neal Hambleton, committee of the person of William Neal, be dismissed, and that his account be confirmed.