## APPEAL OF G. L. HALSEY.
## [ESTATE OF ELI SIEGFRIED.]

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 6, 1888—Decided April 30, 1888.

When the committee of a lunatic, authorized by the court having jurisdiction, makes expenditures for the support of those found by the inquisition to constitute the lunatic's family, he will be protected therein, although the persons receiving the maintenance are not the lawful wife and legitimate children of the lunatic, and such are in esse.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 116 January Term 1888, Sup. Ct.

The final account of Philip F. Stier, as committee of the person and estate of Eli Siegfried, a lunatic, having been filed and exceptions made thereto by G. L. Halsey, the administrator of the lunatic, then deceased, and by Catharine Siegfried, widow, and Albert Siegfried, a son, *Mr. Aaron Goldsmith*, appointed auditor to hear and determine the exceptions and to report distribution, found the following facts:

Eli Siegfried, the deceased lunatic, was declared of unsound mind by an inquisition taken on December 24, 1880, which inquisition further found that Isabella Siegfried, aged 46 years, was the wife, and Alice, aged about 15 years, Clara, aged about 13 years, and Stanley, aged about 7 years, were the children and the heirs and next of kin of the said Eli Siegfried. This inquisition was confirmed by the court on December 27, 1880, and on January 5, 1881, Philip F. Stier was appointed committee of the person and estate of the lunatic.

Statement of Facts.

On January 5, 1881, the committee presented a petition to the court asking for an order to apply the principal of the personal estate for the support of the lunatic, and so much as shall be necessary, for the support and maintenance of his family and for the education of his minor children. The court the same day made the said order. At different times thereafter until the death of the lunatic, the committee presented petitions asking for additional allowances for the said purpose, which were granted by the court.

It appears, however, that on July 2, 1848, Eli Siegfried, afterwards the lunatic, had married a Catharine Siegfried, had by her several children one of whom was Albert Siegfried, and lived with her at Tamaqua, about fifty miles from Easton, until in 1865, when he deserted her and afterwards came to Easton and since that time had lived with said Isabella Siegfried, until he was declared insane. By Isabella Siegfried he had the children named in the inquisition.

There was no evidence of any marriage with Isabella Siegfried, but they were commonly reputed man and wife. The committee had known them as such and had no knowledge of the existence of Catharine Siegfried at the time of his appointment, nor until November of 1882, when Albert Seigfried called upon him and told him that he was the son, and his mother the wife, of the lunatic. This son called on the committee several times afterwards and stated that he came on behalf of his mother and wanted to know whether something could not be done for her, at one of which visits he was told by the committee to make an application to the court, as he, the committee, was acting under the direction of the court.

On August 24, 1884, a written notice was served on the committee signed by G. L. Halsey, attorney for Catharine Siegfried, which was to the effect that said Catharine Siegfried would hold the committee liable for all moneys expended or to be expended for the support and maintenance of the family in Easton.

The committee continued to support and maintain the family, as named in the inquisition, until the death of the lunatic, which occurred August 25, 1885. The total amount expended for this purpose was $2,144.56. Of this amount $1,263.23 were expended prior and up to November, 1882.

Upon the foregoing facts the exceptants contended that the whole of the amount so applied by the committee was improperly applied, was not for the benefit of the lunatic, and not properly charged against his estate, and the committee should be surcharged therewith; that the orders and decrees of the court for the allowances obtained were procured by fraud and collusion, and without notice to the wife and next of kin of the said lunatic; that the committee was guilty of a wilful omission and laches in not advising the court of the existence of the lawful wife and son of the lunatic, or of the notices he received, and, in continuing to apply for allowances and making payments after the notices, without making inquiry or informing the court of the same, was chargeable with a fraud upon the court and, therefore, not entitled to the credits in question.

The auditor, considering the powers of the Court of Common Pleas in regard to the persons and estates of lunatics: Yaple v. Titus, 41 Pa. 195, ruled that the finding of the inquisition and confirmation thereof by the court was a judicial decree and as such could not be attacked collaterally except for fraud: Jackson v. Summerville, 13 Pa. 369; Painter v. Henderson, 7 Pa. 52; Buswell on Insanity, § 56; that want of notice to the exceptants did not affect the validity of the decree: Roger's Case, 9 Abb. N. C. 141; Rogers v. Walker, 6 Pa. 371; Willis v. Willis, 12 Pa. 159; that the finding of the inquisition as to the persons constituting the family of the lunatic at the time of the finding was prima facie evidence thereof, though perhaps not concluding persons interested when they were not parties to any of the proceedings: Act of June 13, 1836, P. L. 592; Shelford on Lunacy, § 84; that the committee, under the direction of the court acted in accordance with this finding and was protected so long as the finding of the inquisition in regard to the family of the lunatic was unaffected by traverse thereof; Guthrie's App., 16 Pa. 421; Buswell on Insanity, § 86; Yaple v. Titus, 41 Pa. 195; Story, Eq. J., § 465; that no fraud had been shown in the evidence and it was not to be presumed: Bear's Est., 60 Pa. 430; Lutton v. Hesson, 18 Pa. 109. The auditor was further of the opinion that, as the lunatic himself when of sound mind had created the relation with Isabella Siegfried and her children, and as the committee had

expended the estate, under the orders of the court, in the precise manner which the lunatic himself had followed, it would be inequitable to compel him to refund money so expended in good faith and without negligence : Ex parte Whitbread, 2 Mer. 99 ; Hambleton's App., 102 Pa. 50 ; Shelford on Lunacy, 102 ; Noritz v. Garnhart, 7 W. 302. Under these conclusions of law the auditor overruled all the exceptions and filed a report of his findings of fact and law accordingly.

To this report the said administrator filed the following exceptions :

1. The auditor erred in not sustaining the exception to the credits claimed for expenditures for Isabella Siegfried and her children.

2. The auditor erred in not sustaining the exception to the commissions claimed by the accountant.

3. The auditor erred in allowing the items of credit claimed by the accountant for expenditures for Isabella Siegfried and her family from November, 1882, the date found by the auditor, of the first notice by Albert Siegfried on behalf of Catharine Siegfried to the accountant.

4. The auditor erred in not disallowing all the credits claimed in the account for expenditures for Isabella Siegfried and her family, from August 24, 1884.

On October 25, 1886, the court, SCHUYLER, P. J., without opinion filed, dismissed the foregoing exceptions and confirmed the auditor's report; thereupon the exceptant took this appeal, assigning this order of the court as error.

*Mr. W. S. Kirkpatrick* (with whom was *Mr. M. Kirkpatrick*), for the appellant :

1. An inquisition of lunacy finding insanity is but prima facie evidence of the fact and is not conclusive in a collateral matter : Hutchinson v. Sandt, 4 R. 234 ; Willis v. Willis, 12 Pa. 159 ; Gangwere's Est., 14 Pa. 417 ; Bowman v. Van Baum, 14 W. N. 185 ; Morrison v. Mullin, 34 Pa. 12. The only question that can be tried upon a traverse, is the sanity or insanity of the person, and the finding as to the estate and family of the alleged lunatic is only for the information of the court and binds no one : McElroy's Case, 6 W. & S. 451 ; Commonwealth v. Meredith, 14 W. N. 188. If the finding of

the inquisition as to the only question which can be traversed is not conclusive, how can the finding as to the matters which are not binding on any one, be conclusive upon persons who have not been made parties and have had no notice ?

2. The auditor admits that the finding of the inquisition as to what persons constituted the family of the lunatic, may not conclude persons interested who were not made parties. A fraudulent judgment, like a fraudulent deed, is good against all the world but the interests of those intended to be defrauded : Thompson's App., 57 Pa. 175 ; Cochran v. Eldridge, 49 Pa. 365; and the exceptant's purpose was not to reverse the finding as to the insanity of the deceased, but to show that the persons who received the benefit of the lunatic's estate were not entitled thereto.

3. The committee failing to inform the court of the knowledge he obtained and to invoke its aid in discovering the proper parties to be supported out of the lunatic's estate, but continuing to apply for allowances and to make payments to those having no legal claim thereto, was guilty of negligence and chargeable with a fraud upon the court. He is therefore liable for money paid out under erroneous orders procured by him after full knowledge of the existence and residence of the lawful wife and legitimate son : Mitchell v. Stewart, 13 S. & R. 295.

4. The doctrine of estoppel is inapplicable. This defence arises when one misrepresents the truth or by wilful silence misleads another, not having knowledge of a particular fact, into error and loss : Smith v. McNeal, 68 Pa. 164 ; Bigelow on Estoppel, 4th ed., 564. Hambleton's App., 102 Pa. 50, is also to be distinguished. It was there held that when the estate of the lunatic is sufficient to maintain him and his household in the manner he had chosen for himself before his lunacy, and such maintenance is best adapted for his comfort after lunacy, the court should authorize the necessary expenditure. Moreover, the exceptions were as to the amount expended, not as to the persons receiving it, and the lunatic was without any family of his own.

5. Compensation is allowed to trustees as a reward for a faithful execution of the trust confided to them. Misconduct is always followed by a loss of commissions : Clauser's Est.,

84 Pa. 51; Milligan's App., 97 Pa. 525; Berryhill's App., 35 Pa. 245; Robinett's App., 36 Pa. 174; Norris's App., 71 Pa. 106.

*Mr. H. S. Cavanaugh,* for the appellee, was not heard.

OPINION, MR. CHIEF JUSTICE GORDON:

The assignments of error in this case cannot be sustained. Philip F. Stier was but the officer of the Court of Common Pleas, and all he did was done under the order and sanction of that court; neither can he be punished for its errors if, indeed, any such there were. The commission of lunacy, acting in accordance with the law of the commonwealth, not only found the fact of Eli Siegfried's unsoundness of mind, but also the persons, nominatim, composing his family, and the maintenance ordered was for this lunatic and this his family. Whether that family was legitimate or illegitimate was of no consequence to Stier, nor was it his business to ascertain whether Siegfried had another family with which he had lived years before. His business was to obey the orders of his legal superior, and, having done so, he is entitled to protection. Nor is he to be limited to that which he lawfully expended in obedience to said orders, but he must also have his reasonable commissions. What if this family was illegitimate? The children, at least, were those of Siegfried, and could not be turned out to starve just because they were bastards. Had, therefore, the court, from the first, been informed of all the particulars, it could have done nothing but that which it did do; that is, order the committee to provide for the lunatic and the family which he then had about him: · Hambleton's Appeal, 102 Pa. 50.

The decree is affirmed, and the appeal dismissed at the costs of appellant.