409 A.2d 401

**ESTATE OF Robert SEWELL, Deceased.**

**Appeal of Sharon Lee WATTS.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 1979.

Decided Dec. 21, 1979.

380

David M. Jordan, Norristown, for appellant.

Paul Baker Bartle, Norristown, for appellees Fidelity Bank et al.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Testator, Robert Sewell, Sr., died in 1939, survived by his wife and three children, Robert Sewell, Jr., Elizabeth Sewell Odell and Beatrice Sewell Brown. By his will, testator bequeathed his entire estate to named trustees in trust for the benefit of his wife for life. In subparagraph First (c), testator directed the trustees, upon his wife's death,

> "to pay over the net income in quarterly installments equally to my children then living and the issue of any children then deceased, including the issue of any children who predecease me, issue of deceased children taking the share their parent would take if living, and to continue such payments to my issue per stirpes until the death of my last surviving child."

Testator's wife died in December, 1968. At the time of her death, only one child of testator, Beatrice Sewell Brown, was still living. Upon the orphans' court's confirmation of a first accounting, testator's trustees began to pay trust income exclusively to Beatrice Sewell Brown. Exclusive payments of income continued until March, 1975, when Beatrice Sewell Brown died.

On this second accounting, filed by trustees upon the death of Beatrice Sewell Brown, appellant Sharon Lee Watts challenged, as she now challenges on appeal, her exclusion from income payments under subparagraph First (c). Appellant is the adopted child of Robert Sewell, Jr., one of testator's children who predeceased testator's wife. Appellant was never given notice of the trustees' first accounting.[1] Indeed, until the second accounting, appellant was unaware of the terms of her grandfather's bequest.

The trustees gave appellant notice of the second accounting, informing her of her right, under another clause of testator's will, to share in trust principal as a "grandchild."[2] It was only upon notice of the second accounting that appellant learned of the exclusive payments of income to Beatrice Sewell Brown. Appellant then claimed that this Court's decision in *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972), permitting an adopted child to take under a bequest to "children," entitled her to share trust income with Beatrice Sewell Brown as an "issue of a deceased child." Although appellant does not contend that she should have been paid trust income before this Court's decision in *Tafel*, she does maintain that from the date of *Tafel* until termination of the trust the trustees erroneously made exclusive income payments to Beatrice Sewell Brown. Appellant contends

1. At the time of the first accounting and throughout administration of the trust, appellant was a resident of Texas.

2. By subparagraph First (d) of his will, testator directed the named trustees to pay principal, upon the death of the last surviving child, "to my grandchildren then living and the issue of any of my grandchildren then deceased. . . ." The trustees determined appellant is a "grandchild" entitled to take under this bequest. See infra note 3.

that the trustees should be surcharged for making these exclusive payments from the time of *Tafel* until termination of the trusts. The orphans' court on the second accounting held that the trustees should not be surcharged. We disagree and, accordingly, vacate and remand for proceedings consistent with this opinion.

It is axiomatic that "[w]hen there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them." Restatement (Second) of Trusts § 183 (1959). Accord, II Scott on Trusts § 183 (1967). By failing at the time of *Tafel* to confirm appellant's status as a beneficiary and continuing to make payments of trust income to Beatrice Sewell Brown, the trustees breached their duty as fiduciaries to deal impartially with appellant and Beatrice Sewell Brown.

The trustees attempt to justify their failure to treat appellant as an income beneficiary on narrow grounds. The trustees do not claim that they were unaware of this Court's decision in *Tafel*, nor do they dispute that appellant qualifies as an "issue" under testator's will.[3] The trustees do not contend that they were unaware of appellant's existence. Rather, they concede otherwise:

"[W]e have known of the existence of [appellant] Sharon Lee Watts for many years. On January 6, 1947 a notation was made on our docket card for the captioned trust to the effect that [Robert Sewell, Jr.'s] wife had a child by a

**3.** Nothing in the reasoning of the prevailing view expressed in *Tafel* would suggest that appellant would not be entitled to share in trust income as an "issue." To the contrary, this Court has already held, in harmony with *Tafel*, that where no contrary intent appears, a bequest to "issue" includes an adopted child. *Sykes Estate*, 477 Pa. 254, 383 A.2d 920 (1978). See also *Flinn Estate*, 479 Pa. 312, 388 A.2d 672 (1978) (following view expressed in *Tafel* that "children" includes adopted children unless otherwise expressed). It should be noted that the trustees in their proposed distribution of principal in accordance with subparagraph First (d), see supra note 2, recognize the scope of *Tafel* includes bequests to "grandchildren." The trustees' accounting filed upon Beatrice Sewell's Brown's death seeks approval not only of distribution of income to Beatrice Sewell Brown but also a proposed distribution to testator's "grandchildren." This proposed distribution to "grandchildren" includes two children of Beatrice Sewell Brown and also appellant.

former marriage, Sharon Lee Melton. The entry continues . . . 'after the marriage the name of the child was changed to Sharon Lee Sewell and there is some question as to whether this child was ever adopted by [Robert Sewell, Jr.]' "[4]

The trustees' argument is that they had no "actual knowledge" of appellant's status and, in their view, cannot be surcharged for failing to recognize appellant's status as an income beneficiary. This view is based on an analogy to the duty owed by a fiduciary to beneficiaries upon the filing of an account. Under the Probate, Estates and Fiduciaries Code, a trustee "shall give written notice of the filing of his account" to unpaid claimants who give written notice of a claim and "to every other person known to the accountant to have an interest in the estate as beneficiary, heir, or next of kin." See 20 Pa.C.S. §§ 3503 & 7183(1). The trustees read the statutory language "known" to mean that, unless a fiduciary is certain of a beneficiary's interest, there is no duty to inform or otherwise make provision for the beneficiary.

Although the trustees insist that, based on the above docket entries, they had insufficient knowledge of appellant's status, the very docket entries they cite demonstrate otherwise. Since 1947, the trustees were aware that Robert Sewell, Jr.'s wife had a child by a former marriage, and that the child's name was changed to "Sharon Lee Sewell." Although the docket entry states that there is "some question" concerning appellant's status, the information the trustees did have presented more than enough evidence to require the trustees to confirm appellant's status.

The trustees' conduct at the time they filed their second account belies any claim that they were not substantially aware of appellant's status. At termination of the trust, when faced with testator's direction to distribute principal to testator's "grandchildren,"[5] the trustees had no new

4. Letter from Mrs. A. R. Hammenway, Trust Officer, The Fidelity Bank, Stipulation of Counsel, Exhibit "D," Record at 37a.

5. See supra note 2.

information concerning appellant's status. If the trustees believed that appellant was not in all probability adopted, there would be no reason then to inquire further. Yet the trustees inquired, easily confirmed that appellant was adopted, and informed her of her interest in the estate.[6]

The trustees argue in the alternative that their exclusive payments of income to Beatrice Sewell Brown were required by a decree of the orphans' court confirming their first accounting. They conclude that, because they acted in accordance with this decree, they may not be surcharged. This contention, too, must be rejected. The trustees' premise, that fiduciaries may not be surcharged where they properly rely upon an adjudication of court directing payment of funds in their trust, is of course a sound one. "The beneficiary may be barred by a decree of a proper court from holding the trustee liable for a breach of trust." Restatement (Second) of Trusts, supra at § 220. Accord, III Scott on Trusts § 220, p. 1765 (1967). See, e.g., *Halsey Appeal,* 120 Pa. 209, 13 A. 934 (1888). This premise, however, can have no bearing where, as here, appellant's right to trust income never was "open to dispute." Restatement (Second) of Trusts, supra at § 220 Comment a.[7] Nothing in the decree of the orphans' court confirming the trustees' first accounting even purports to address appellant's claim on trust income.[8] And there is nothing on the

6. The record reveals that the trustees' inquiry into appellant's status was no onerous task. The trustees were able to confirm by phone conversation what their records already revealed. Thereafter they gave appellant notice of her interest. Appellant immediately responded. The trustees cite no evidence which would indicate that these same contacts could not have been made earlier.

7. Comment a provides:
   "*Scope of the rule.* The settlement of a trustee's account in a court having jurisdiction to settle his accounts renders res judicata matters which were open to dispute, whether or not actually disputed."

8. The sole issue then in dispute was whether David Dallas Odell, spouse of Elizabeth Sewell Brown (a child of testator who predeceased testator's wife) then had a right to take trust income pursuant to a testamentary appointment his spouse made pursuant to testa-

record to indicate that appellant then could have advanced her right to income. Appellant did not receive notice of the first accounting and was not otherwise aware of it. Compare *Forsyth's Estate*, 335 Pa. 281, 286–87, 6 A.2d 817, 819 (1939) (party participating in previous adjudication precluded from relitigating issues decided).

Only a subsequent decree of court, rendered following a proceeding at which appellant's right to trust income could have been put at issue, would provide the trustees the protection they now seek. In light of *Tafel*, the trustees could have obtained such a decree. See Uniform Declaratory Judgments Act, Act of June 18, 1923, P.L. 840, § 4, 12 P.S. § 834 (1953), renumbered, 42 Pa.C.S. § 7535. See also Restatement (Second) of Trusts, supra at § 259 ("[t]he trustee is entitled to apply to the court for instructions as to the administration of the trust if there is reasonable doubt as to his duties or powers as trustee"). Here, however, the trustees failed to do so. Instead, they acted at their own peril and paid trust income exclusively to Beatrice Sewell Brown. Because this was error, we hold that the trustees must be surcharged.

Decree vacated and case remanded for proceedings consistent with this opinion. Each party pays own costs.

MANDERINO, J., did not participate in the decision of this case.

tor's will. Subparagraph First (d) of testator's will directed trustees to pay principal to testator's "grandchildren" subject to the proviso that "any child" of testator may appoint "any or all of the income from his or her proportionate share of the principal be paid to the surviving spouse of such child for and during the term of the natural life of such surviving spouse. . . ." Elizabeth Sewell Brown exercised her power to appoint and David Dallas Odell claimed the appointment operated to give him an immediate right to income. The orphans' court disagreed and concluded that David Dallas Odell could take income only upon termination of the trust. (In accordance with this adjudication, the trustees' proposed statement of distribution provides for income to David Dallas Odell.)