## Bell Estate

*Joseph T. LaBrum,* for petitioner.
*Stephen M. Feldman,* for respondent.
*Donald H. Pugh,* for trustees.

*W. Donald Sparks,* p.p., guardian and trustee ad litem.

DIGGINS, P. J., November 30, 1973.—The instant matter is before this court by virtue of a petition for citation filed on behalf of the petitioner, Edward A. Baxter, adopted son of Emma Bell Baxter, the latter being one of the daughters of the decedent, Samuel R. Bell. Ann Bell Shoustal, one of the parties in interest, filed an answer containing new matter, to which a reply has been filed. All other respondents, and the remaining parties in interest,[1] have filed preliminary objections in the nature of a motion to strike the aforementioned petition. Essentially, no issues of fact have been raised for determination; rather, the issues are legal in nature. Briefs have been submitted on behalf of the respective parties, and oral argument has been presented. The matter is now ripe for determination.

The record discloses that decedent, Samuel R. Bell, died testate on January 29, 1937. His will was dated August 22, 1934, and two codicils thereto were subsequently promulgated on December 12, 1934, and November 6, 1936, respectively. Decedent was survived by his wife and six children, one of whom was Emma Bell Baxter. By his will, testator, inter alia, divided the balance of his residuary estate into shares which he placed in trust for the benefit of his six children. The trusts for each of his three sons consisted of a four-twenty-sevenths share of the residuary estate, whereas the trusts for each of his three daughters consisted of a two-twenty-sevenths share of the residuary estate. The trusts for testator's sons provided for the

---

[1] Minor beneficiaries, as well as unborn and unascertained remaindermen, are represented by a guardian and trustee ad litem appointed by this court at the request of the petitioner.

distribution to them of one-half of the principal, absolutely, at age 35, whereas the trusts for testator's daughters did not provide for any principal distribution. Other than these differences, the trusts for all of testator's children were identical in that each child was to receive the net income for his or her life, and, upon the death of the child, the principal was directed to be distributed to his or her children then living, or, if none, to the issue, then living, of any deceased child of the life tenant, providing for alternative distribution over in the event of the death of a child without issue.

Emma Bell Baxter, one of decedent's daughters, and her husband had no natural children. However, on December 28, 1936, subsequent to the date of testator's will and codicils, Emma Bell Baxter and her husband legally adopted Edward A. Baxter, the present petitioner, who was then slightly over two months of age. The prior record indicates, in essence, that decedent, Samuel R. Bell, was pleased with the adoption of Edward Albert Baxter, used terms of affection when referring to him, and treated him the same as another (natural) grandchild; however, despite knowledge of the legal adoption, decedent made no change to his will (or codicils) between the date of adoption and the date of his death on January 29, 1937, approximately one month after the adoption.

Emma Bell Baxter died on June 16, 1965. Subsequent thereto, the trustees filed their first account with this court, and, at the time of audit, the present petitioner, Edward A. Baxter, appeared and claimed the right to the principal share held in trust for his adoptive mother, Emma Bell Baxter. By adjudication, dated December 6, 1967, this court, through the late Judge Edward Leroy vanRoden, determined that Edward A. Baxter was not entitled to take the trust principal of the trust established for his adoptive mother and di-

rected that same be divided among the remaining trusts. Exceptions thereto were filed on behalf of Edward A. Baxter, and by opinion and decree, dated February 21, 1969, this court, speaking through the late President Judge Henry G. Sweney, dismissed the said exceptions and confirmed the prior adjudication. This decision was appealed by the present petitioner to the Supreme Court of Pennsylvania. On July 8, 1970, the Supreme Court of Pennsylvania, in Bell Estate, 439 Pa. 432, affirmed the decision of this court, per curiam.[2] The basis of these decisions was consonant with the then applicable law of Pennsylvania, viz. that an adopted child, adopted after the date of decedent's will, was barred from his (or her) adoptive parent's share by the then controlling construction of section 16(b) of the Wills Act of June 7, 1917, P. L. 403, 20 PS §228. Pursuant to the aforesaid appellate affirmance of the decision of this court, a schedule of distribution was approved on May 17, 1971.

On November 17, 1972, however, the principles of interpretation, upon which this court and the Supreme Court of Pennsylvania refused to award to Edward A. Baxter the trust principal in question, were disavowed by the divided decision of the Supreme Court of Pennsylvania Tafel Estate, 449 Pa. 442. In Tafel Estate, supra, the majority of the court held, under factual and legal circumstances analogous to the instant case, that adopted children of testator's son, who had been adopted, while minors, subsequent to testator's death, were entitled to receive the principal share of the trust held for their adoptive father. This conclusion resulted from the court's new view of the construction of section 16(b) of the Wills Act of June 7, 1917, supra, viz.,

[2] The late Justice Cohen filed a concurring opinion which was joined in whole by Chief Justice Bell and Justice Egan, and, in part, by Justice Pomeroy.

that is the construction of the statutory clause "unless a contrary intention appears" (in the instrument), it is now presumed that testator intended to include any "child" or "children" who were adopted. Thus, the basic issue here presented for determination is placed into proper perspective.

By virtue of the decision of the Supreme Court in Tafel Estate, supra, on March 28, 1973, Edward A. Baxter filed the instant petition for citation under section 721, now section 3521 of the Probate, Estates and Fiduciaries Code of June 30, 1972, No. 164, 20 PS §3521, of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.101, et seq., and for review of adjudication and decree of distribution "As Equity and Justice Shall Require," and, pursuant thereto, a citation was issued. In essence, petitioner requests that the trustees be directed to file a corrected schedule of distribution awarding to him the principal of the share which had been held in trust for his adoptive mother at the time of her death, together with accrued income thereon, and that the aforesaid decisions of this court, dated December 6, 1967, and February 21, 1969, be set aside as erroneous and of no effect. These requests are based on the decision in Tafel, supra, and section 3521 of the Probate, Estates and Fiduciaries Code, 20 PS §3521, which provides as follows:

"If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree

of court before the filing of the petition. The court or master considering the petition may include in his adjudication or report, findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made."

It is unquestioned that the instant petition was filed within five years of the decision of this court on February 21, 1969, the decision of the Supreme Court on July 8, 1970, and the approval of the schedule of distribution on May 17, 1971. Nor is it questioned that the subject trust funds are available, since some have been divided among the remaining trusts which are presently functioning and in existence.

As aforesaid, preliminary objections to the instant petition have been filed on behalf of all parties in interest except Ann Bell Shoustal who has filed an answer containing new matter to which a reply has been filed. Further, no factual issues are presented for determination.

Although variously stated by counsel for the respective parties, the basic issue here presented for determination is whether or not this court possesses the power and authority, under the circumstances here presented, to entertain the subject petition in light of the doctrines of res judicata and law of the case. The equitable considerations here present justifiably mitigate in favor of petitioner. However, the doctrines of res judicata and law of the case are applicable, and, by virtue thereof, this court, after much consideration and deliberation, has concluded that, under the circumstances here present, it does not possess the power and authority necessary to entertain the subject petition, and, accordingly, that it must be dismissed. It becomes increasingly apparent that the law as it presently exists creates inequities of

greater concern than the possible mischief it was traditionally intended to present. But this is a matter to be corrected by the legislature or the Supreme Court.

The law is well established relative to the doctrine of res judicata that a final valid judgment, upon the merits, by a court of competent jurisdiction, bars any future suit between the same parties, or their privies, on the same cause or causes of action. See, inter alia, Stevenson v. Silverman, 417 Pa. 187; Helmig v. Rockwell Manufacturing Company, 414 Pa. 518, and Burke v. Pittsburgh Limestone Corporation, 375 Pa. 390. It is equally clear that a subsequent decision revealing a prior decision to be in error does not preclude the application of the doctrine of res judicata. See, inter alia, Delaware River Port Authority v. Pennsylvania Public Utility Commission, 408 Pa. 169, and cases cited therein.

The doctrine of law of the case holds that when an appellate court has considered and decided a question submitted to it on appeal, it will not, upon a subsequent appeal of the same case, reverse its previous ruling even though convinced that it was erroneous. See, inter alia, Reamer's Estate, 331 Pa. 117, and Commonwealth v. Tick, Inc., 431 Pa. 420, and cases cited therein. This doctrine, however, is not inflexible and has *not* been applied where, inter alia, under appropriate circumstances, the "subject matter" or "fund" was different in character or nature on the subsequent review as exemplified by Reamer's Estate, supra, Fownes Trust, 23 Fiduc. Rep. 517, and Arrott Estate, 421 Pa. 275. However, the law is equally well established that a lower court is without power to modify, alter, amend, set aside or in any measure disturb or depart from the judgment of the reviewing court as to any matter decided on appeal. See Hae-

fele v. Davis, 380 Pa. 94, Commonwealth v. Tick, Inc., supra, and cases cited therein, and Bailey's Estate, 291 Pa. 421.

Thus, in summary, the resolution of the basic issue here presented is dependent upon whether the parties, the questions of law (and fact), and the "subject matter" or "fund" are the same as those present in the prior litigation which was decided by the Supreme Court in Bell Estate, supra. First, the parties are, in essence, the same, with the exception of certain after-born grandchildren and great grandchildren. Second, no issues of fact are presented for determination. Third, the ultimate legal issue, viz., whether petitioner should be awarded the principal of the share held in trust for his adoptive mother at the time of her death, is the same. Fourth, and most significant in this context, the "subject matter," or "fund," viz., the principal of the share held in trust for petitioner's adoptive mother, is the same. For these reasons, this court has concluded that the doctrines of res judicata and law of the case are applicable hereto, and, under these circumstances, that it is without power or authority to entertain the subject petition notwithstanding the intervening decision of the Supreme Court in Tafel Estate, supra. Nor is this power or authority, in the instant case, supplied by the provisions of section 3521 of the Probate Code. See, inter alia, Osterling's Estate, 337 Pa. 225, and Scott's Trust, 40 D. & C. 227.

Counsel for petitioner places primary emphasis upon Reamer's Estate, supra, and Fownes Trust, supra. These authorities, however, are distinguishable from and, thus, do not control the instant case. In Reamer's Estate, supra, the decedent died *intestate*, without issue, and was survived by nine first cousins and by the adopted daughter of a deceased sister. The

register appointed, as administrator, a person designated by the cousin. The nominee of the adoptive niece sought to have the letters revoked and himself appointed, but this petition was dismissed by the register. The decision was sustained by the lower court, and, on appeal, the Supreme Court of Pennsylvania affirmed, holding that the adoptive niece could not inherit from the decedent under the Intestate Act of 1917, and, thus, had no interest in the estate. Thereafter, in Cave's Estate, 326 Pa. 358, the Supreme Court decided that an adoptive child has the same right of inheritance from the collateral kindred of his adoptive parents as a natural child would have. Subsequently, the adoptive niece petitioned the lower court to vacate and review the prior decree of confirmation by virtue of the decision in Cave's Estate, supra; this petition was dismissed by the lower court. On appeal, the Supreme Court, in Reamer's Estate, 331 Pa. 117, reversed. In its reasoning, the court reviewed the doctrine of res judicata, law of the case, and analogous principles, including "separate fund" cases, and pertinently stated, at pages 121-22:

"If, then, the law applied by the orphans' court to an adjudication distributing one fund need not be followed in a subsequent distribution of another fund in the same estate, it would seem a fortiori that an erroneous principle of law which is made the basis of a decision determining the appointment of the administrator is not binding upon the court in a subsequent proceeding in the estate in connection with the wholly distinct subject of distribution."

In the instant case, however, no such distinction is present, since the "subject matter," as aforesaid, is the same. Further, the court stated, at page 124, that it

was not asked to reverse the appointment of the administrator, noting "that matter has been conclusively determined." By analogy, the Supreme Court of Pennsylvania, in Bell Estate, supra, "conclusively determined" the question of distribution in the subject case.

Fownes Trust, supra, is also distinguishable from the instant case. There, a deed of trust, executed by the settlor in 1933 (the settlor died in 1935) provided for the payment of the income, for life, to the four children of his daughter, Amy, upon her death, and to the issue, per stirpes, of any deceased child of Amy until termination of the trust. Amy died in 1936. One of Amy's sons, John Barnes, died in 1963, survived by a son, John Barnes, 3rd, who was adopted in 1943 as an infant, then two months of age. In 1966, upon appeal from the decision of the lower court, at audit, of the trustee's *fifth* and partial account, the Supreme Court in Fownes Trust, 421 Pa. 476, held, inter alia, that the adopted children of settlor's grandchildren were not "issue" and, thus, had no rights under the deed of trust. Tafel Estate, supra, was subsequently decided. Thereafter, upon the audit of the trustee's *sixth* and partial account, the adopted son of John Barnes, John Barnes, 3rd, claimed the right to share in income, and the Orphans' Court Division of Allegheny County held, under these circumstances, inter alia, that John Barnes, 3rd, was entitled to receive a share of income from the trust as of the date of the *sixth* and partial account. In reaching this conclusion, the Allegheny County court considered the doctrines of res judicata and law of the case, but held that they were inapplicable since the "subject matter" or "separate fund" was different from that which was before the Supreme Court in 1966, viz., that the *sixth* ac-

counting was a "separate fund" even though it represented income generated from the same principal assets included in both accountings. In the instant case, however, no "separate fund" or different "subject matter" is involved since, in both instances, petitioner seeks the same trust principal as a distributee.

By virtue of the conclusions hereinabove achieved, this court deems it unnecessary to discuss the remaining issues and authorities advanced by counsel for the respective parties.

Accordingly, the court enters the following

## DECREE

And now, to wit, November 30, 1973, upon consideration of the petition for citation under section 721 of the Fiduciaries Act of 1949 (now section 3521 of the consolidated Probate, Estates and Fiduciaries Code, 20 Pa. S. §3521), and for review of adjudication and decree of distribution "As Equity And Justice Shall Require," filed on behalf of petitioner, Edward A. Baxter, the pleadings filed in this cause, the record, the briefs filed on behalf of the respective parties, and after argument, it is ordered, adjudged and decreed that:

1. The citation heretofore directed to be issued be and the same is hereby discharged;

2. The preliminary objections filed relative to the aforesaid petition be and the same are hereby sustained; and

3. The aforesaid petition filed on behalf of petitioner, Edward A. Baxter, be and the same is herewith stricken and dismissed.