388 A.2d 672

## ESTATE of William FLINN, Deceased.

### Appeal of Patricia P. DUFFY and Isabel P. Eaton.

### Appeal of Louise Flinn WAINWRIGHT, George H. Flinn II, Lawrence Flinn Jr., Michael deV. Flinn, and Mary Louise Flinn Davidson.

Supreme Court of Pennsylvania.

Argued March 13, 1978.

Decided June 5, 1978.

Reargument Denied July 17, 1978.

314

Guy L. Warman, John Michael Studeny, Pittsburgh, for appellant at No. 89.

Cuthbert H. Latta, Philadelphia, for appellant at No. 93.

Raymond R. Goehring, Jr., Robert W. Beilstein, Goehring, Rutter & Boehm, Pittsburgh, for appellees at No. 89.

Raymond R. Goehring, Jr., Robert W. Beilstein, Goehring, Rutter & Boehm, Pittsburgh, for appellees at No. 93.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In a will executed in 1923, testator William Flinn, after making certain bequests, devised two and one-half per cent of the residue of his estate to his sister and a charitable institution and divided the balance of the residue among his six children. George H. Flinn, testator's eldest son, was to receive his share outright. A. Rex Flinn, William Arthur Flinn and Ralph E. Flinn, testator's other sons, were each to receive a portion of his share outright and the balance held in trust. Testator's two daughters, Mary Flinn Lawrence and Edith Flinn Patterson, were to receive their shares entirely in trust. Testator died in 1924.

The trust for Mary Flinn Lawrence, which closely resembled those for the other four children for whom testator created trusts, specified:

"(c) To pay to my daughter, Mary Flinn Lawrence, the income on sixteen and one-fourth per centum (16¼%) of said residue of my estate during her lifetime, to be paid per quarterly. At her death her husband shall receive out of said income Four Thousand ($4,000.00) Dollars each year, payable quarterly, during his lifetime or until he again marries. The balance of said income shall be paid to her children, share and share alike, and at the death of her husband or when he remarries, the whole of said income shall be paid to her children, share and share alike, until the youngest child becomes twenty-one years of age, when the principal of said sixteen and one-fourth per centum

(16¼%) of said residue of my estate shall be equally divided among her children, and the children of any of her deceased children shall take in equal shares the share to which their respective parent would be entitled. In case my said daughter, Mary, shall die without issue the principal of said sixteen and one-fourth per centum (16¼%) of the residue of my estate, subject to the yearly payment of my daughter's husband during his lifetime, or until he remarries, shall go to her brothers and sisters in equal shares; the children of any deceased brother or sister taking in equal shares the interest of their respective parent."

Mary Flinn Lawrence, the last surviving child of testator died in 1974. She never gave birth but adopted appellee John Lawrence, Jr. in 1938, when John was four years old, and appellee William Flinn Lawrence in 1941, when he also was four years old. When Mary Flinn Lawrence's children sought to take under the will as her "children," appellants, natural-born grandchildren and greatgrandchildren of testator by his other children, objected.[1] They argued that adopted children were ineligible beneficiaries and that Mary Flinn Lawrence's share of the estate should pass under the provision channeling it to the children of her deceased brothers and sisters if she should "die without issue."

A similar dispute arose in 1964 when testator's son William Arthur Flinn died leaving only an adopted son. The orphans' court ruled in 1966 that because the will did not expressly extend trust benefits to adopted grandchildren, the adopted child of William Arthur Flinn was not entitled to take under the will. William Arthur Flinn's share was distributed to testator's surviving children and testator's grandchildren of deceased children as provided in a trust provision similar to that in the trust for the benefit of Mary Flinn Lawrence. Although Mary Flinn Lawrence did not participate in the adjudication determining the rights of William Arthur Flinn's adopted son, as a child of testator

1. The greatgrandchildren were entitled to take under the will according to a family agreement.

she received a portion of William Arthur Flinn's share. She used the proceeds of the distribution to establish an inter vivos trust for the benefit of her two children.

The auditing judge determined that appellees, the two adopted children, were eligible beneficiaries under testator's will and directed distribution to them in equal parts. Appellants filed exceptions on the grounds that 1) testator's will expressed an intent to exclude adopted grandchildren; 2) even if the will did not demonstrate a clear intent to exclude, the applicable canon of construction requires exclusion of adopted grandchildren because they were not expressly included; and 3) appellees are barred by the doctrine of collateral estoppel from litigating their eligibility when they benefited from the earlier adjudication denying the right of an adopted grandchild to take under the will. The orphans' court en banc denied these contentions and affirmed the decree of the auditing judge. We affirm.[2]

In *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978), this Court stated:

> " 'It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator.' *Hamilton Estate*, 454 Pa. 495, 498, 312 A.2d 373, 374 (1973); accord, *Blough Estate*, 474 Pa. 177, 378 A.2d 276 (1977); *Hill Estate*, 432 Pa. 269, 247 A.2d 606 (1968).    .   .   .
> The intent of a testator must appear with reasonable certainty, such that there can be little doubt of his intent. If, from the language of the document, the scheme of distribution, and the relevant facts and circumstances, a court cannot determine a testator's intent with reasonable certainty, it must resort to canons of construction. E. g., *Schappell Estate*, 424 Pa. 390, 227 A.2d 651 (1967); *Houston Estate*, 414 Pa. 579, 201 A.2d 592 (1964)." (footnote omitted).

Id. 477 Pa. at 257, 383 A.2d at 921.

■■■ Testator's will does not disclose his intent with reasonable certainty. The bequest to Mary Flinn Lawrence

---

**2.** We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1977).

directed that the "balance of said income shall be paid to her children," "divided equally among her children," and that "the children of any of her deceased children shall take in equal shares." It provided that her share should pass to her brothers and sisters if she should "die without issue." This language does not expressly include or exclude adopted grandchildren. *Estate of Sykes*, supra ("issue"); *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972) (plurality opinion) ("children").

■ The scheme of distribution also does not reveal testator's intent. Appellants argue that testator revealed his intent to discriminate against "strangers to the blood" by discriminating among his own children. It is true that one of testator's children was to receive his share outright while the others were to receive their shares in varying degrees in trust, but this scheme is irrelevant to whether testator intended to exclude grandchildren adopted after his death. Similarly, appellants contend that it is significant that testator made no gifts of principal to "strangers to the blood" except to a charitable institution. This fact does not speak to the question whether testator sought to exclude adopted grandchildren. When testator was willing to bestow his bounty upon an institution, it seems at least as likely that he would desire to pass his estate to his children's children, whether natural-born or adopted.

■ Nor do the circumstances surrounding execution of the will reveal testator's intent. Appellants emphasize that at the time of execution of the will, testator had six living children, all natural-born and all married, and eight grand-children, all natural-born, and that two of testator's children were childless, including Ralph, whose wife was then 61 years old and therefore not likely to bear children. From these circumstances, appellants conclude that testator must have considered the possibility that some of his children would not bear children, and that his failure expressly to provide for adopted children reveals his intention to exclude them. Properly viewed, these circumstances do not disclose testator's intent. It is equally plausible that, because none

of testator's children had adopted children, testator gave no thought to the possibility of adopted children or that, because testator knew that two of his children were childless, he directed his attention to the matter and deliberately used language broad enough to include grandchildren adopted after execution of the will. See *Estate of Sykes*, supra.

Appellants also argue that the prevalent legal interpretation of "children" and "issue" under the Wills Act of 1917, Act of June 7, 1917, P.L. 403, § 16(b), 20 P.S. § 228 (1950), in force at the time of execution of testator's will, included natural-born children only and that testator knew and relied on that interpretation. That Act provided:

> "Whenever in any will a bequest or devise shall be made to the child or children of any person other than the testator, without naming such child or children, such bequest or devise shall be construed to include any adopted child or children of such other person who were *adopted before the date of the will*, unless a contrary intention shall appear by the will." (emphasis added).

Id. In *Estate of Sykes*, supra, and *Tafel Estate*, supra, we held that where a will executed under the 1917 Wills Act does not disclose an intent to the contrary, a bequest to "children" or "issue" is construed to include children adopted after the date of the will. Appellants argue that this canon of construction cannot apply to testator's will because it was executed in 1923 while the wills in *Sykes* and *Tafel* were executed in 1935 after passage of the Adoption Act of 1925, Act of April 4, 1925, P.L. 127, § 4, 1 P.S. § 4 (1963), which provided that an "adopted child shall have all the rights of a child and heir of such adopting parent or parents."

Although the Adoption Act of 1925 intervened between the 1917 Wills Act and execution of the wills in *Sykes* and *Tafel*, neither of those decisions turned on provisions of the Adoption Act. *Tafel* expressly stated that it was construing a single statute, section 16(b) of the Wills Act of 1917, supra. *Tafel Estate*, supra at 446 & n.3, 269 A.2d at 799 & n.3 (bequest to "children"). *Sykes* reaffirmed the rule of *Tafel* and applied it to bequests to "issue." Significantly, *Tafel*

did not purport to overrule any decisions establishing a definition of children excluding children adopted after execution of a will; indeed, appellants have failed to cite a single decision of this Court, and we are aware of none, rendered between passage of the Wills Act in 1917 and execution of testator's will in 1923, construing the term "children" as used in a will executed under the 1917 Wills Act, conclusively excluding children adopted after execution of the will. We therefore reject appellants' contention that testator's use of the terms "children" and "issue" necessarily demonstrate his intent, based on judicial interpretation of the Wills Act of 1917, to exclude individuals in appellees' position.

■■ Because we cannot ascertain testator's intent with reasonable certainty, we must resort to canons of construction. The orphans' court applied to "children" the canon adopted in *Tafel* and reaffirmed in *Estate of Sykes*, supra, and correctly concluded that appellees were eligible beneficiaries under the will.

Finally, appellants argue that the doctrine of collateral estoppel bars appellees from asserting their claim because the orphans' court in 1966, before *Tafel* and *Sykes*, determined that adopted children were not beneficiaries under the will. In *Safeguard Mutual Insurance Company v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975), we declared that a plea of collateral estoppel is valid only if

"1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action."

Accord, *Estate of Ellis*, 460 Pa. 281, 333 A.2d 728 (1975). Here, appellees had no opportunity to litigate the issue. When William Arthur Flinn died in 1964, the orphans' court determined that his adopted child was not an eligible beneficiary and his share of trust benefits passed to testator's

surviving children and testator's grandchildren of deceased children. Appellees' mother was a surviving child of testator and, although she did not participate in the litigation concerning distribution of William Arthur Flinn's share, she received a portion of the funds distributed. Appellees had no claim of entitlement to this money. Thus, although Mary Flinn Lawrence had an opportunity to litigate the issue here in question, appellees did not. *Randall's Estate*, 341 Pa. 501, 19 A.2d 272 (1941) (party not bound by previous adjudication of different portion of trust of which he had no notice and at which he was not present or represented by counsel); compare *Freeman's Estate*, 280 Pa. 273, 124 A. 435 (1924) (beneficiaries of will not barred by previous adjudication of will to which they were not parties) with *Estate of Ellis*, supra (estate executor had full opportunity to litigate his contractual obligations) and *Williams v. Lumbermen's Insurance Company of Philadelphia*, 332 Pa. 1, 1 A.2d 658 (1938) (one not a party to litigation may be bound by it if he openly and actively, with notice to adverse party, assumes and manages the litigation).

Appellants nonetheless contend that appellees were in privity with Mary Flinn Lawrence because she passed her portion of the distributed share of William Arthur Flinn to her children by means of an inter vivos trust. They therefore argue that to allow appellees to take under testator's will would unfairly grant them a double recovery. An individual is in privity with a party where his relationship to the property in question is "mutual or successive." *Central Pennsylvania Lumber Company v. Carter*, 348 Pa. 429, 432, 35 A.2d 282, 283 (1944). A transferee is a successor in interest to property when, like appellees, he receives it as a gift. Restatement 2d of Judgments § 89 (comment f) (Tent. Draft No. 3, 1976).

It is irrelevant, however, that appellees may be estopped from litigating rights to property distributed according to the 1966 orphans' court decree, because they are asserting a right to a different fund, the trust benefits specifically created for the children of Mary Flinn Lawrence. As to that fund, there has been no previous litigation to

which the doctrine of collateral estoppel can apply. Id. § 89(2). "A rule of law made in the distribution of a portion of an estate is not binding upon a court in a subsequent adjudication relating to another portion." *Arrott Estate,* 421 Pa. 275, 280, 217 A.2d 741, 744 (1966); accord, *Brown Estate,* 408 Pa. 214, 183 A.2d 307 (1962); *Kellerman's Estate,* 242 Pa. 3, 88 A. 865 (1913); see *Randall's Estate,* supra. This principle is particularly applicable where, as here, the previous adjudication was based on a legal doctrine no longer followed. *Arrott Estate,* supra; *Reamer's Estate,* 331 Pa. 117, 200 A. 35 (1938).

Appellants seek to distinguish *Arrott Estate,* supra, on the ground that it involved a determination only of income and not of beneficiaries. This distinction is unjustifiable. *Arrott Estate* does not purport to apply its rule to the arbitrarily narrow class of cases to which appellants would confine it, and its rationale is firmly grounded on the sound principle that one's rights to a distinct piece of property are not determined by a judgment concerning a wholly unrelated piece of property. See Restatement of Judgments § 89 (comment e) (effect of judgment limited to property litigated).[3]

We conclude that the auditing judge and the orphans' court en banc correctly determined the issues raised by appellants.

Decree affirmed. Each party pay own costs.

POMEROY, J., did not participate in the decision of this case.

EAGEN, C. J., and O'BRIEN, J., dissent.

---

**3.** *Estate of Tower,* 463 Pa. 93, 343 A.2d 671 (1975) (plurality opinion) is not to the contrary. There, the orphans' court denied the appellants' asserted right to a fund of income accruing before 1960. When the appellants later sought to assert their rights under the same instrument to a fund of income accruing after 1969, the orphans' court denied their petition. Although this Court affirmed, only two members of the Court did so on the purposed basis of res judicata. Three members of the six-judge panel expressly rejected the plurality's position, see *Estate of Tower,* supra (Nix, J., concurring, Roberts, J., joined by Manderino, J., dissenting), and one concurred in the result.