410 A.2d 782

**In re ESTATE of Henry W. BIDDLE, Deceased.**

**Appeal of James Murdock DaCOSTA.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1979.

Decided Feb. 1, 1980.

618

James R. Ledwith, Philadelphia, for appellant.

Ralph N. Teeters, Philadelphia, for appellee, Fidelity Bank.

Walter E. Nelson, Jr., Philadelphia, for appellee, Charles DaCosta, Jr.

Roland J. Christy, Spring House, for appellee, Peter M. DaCosta.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

ROBERTS, Justice.

Since *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972), we have required that adopted children be presumptively included in a testamentary gift to "children" unless the testator's intention to exclude adopted children is clearly indicated. Appellant, an adopted child, claims the right to participate in future income distributions from a testamentary trust established by his adoptive great-grandfather.

The orphans' court held that because appellant could have litigated his claim at a 1952 audit of an account of the estate but failed to do so, that appellant's claim to future income is now barred by principles of res judicata. We hold that the 1952 accounting does not preclude appellant from sharing in future distributions of trust income and accordingly reverse.

In 1923 Henry Biddle died a resident of Chester County. By item SIXTH of his will he left his residuary estate in trust, directing payment of half the income to his daughter Mildred L. Cadwalader for her life, and the other half, per stirpes, to the issue of his deceased daughter, Juliet DaCosta. The testator instructed that on the death of his daughter Mildred the income be paid to his grandchildren, per capita, and to the issue of any deceased grandchildren, per stirpes.[1] The will was duly probated on July 9, 1923 and administration of the trust began.

On September 19, 1949 testator's daughter Mildred died. Shortly thereafter, on February 9, 1950, C. Alexander Da-Costa, one of testator's three grandchildren also died. He was survived by two natural children, Charles A. DaCosta, Jr. and Peter M. DaCosta, and by appellant, James Murdock DaCosta, whom C. Alexander DaCosta had adopted on April 25, 1942 when appellant was thirteen years old.

After these deaths the trustees presented an accounting of testator's estate to the Orphans' Court of Chester County.

---

1. The relevant portion of item SIXTH of testator's will provides as follows:

> "Upon the death of my said daughter, Mildred L. Cadwalader, to pay and divide the entire income from my said residuary estate during the continuance of this trust among all of my grandchildren, share and share alike, such grandchildren to take per capita and not per stirpes. If, however, during the continuance of the said trust any of such grandchildren shall die, leaving children or issue of deceased children him or her surviving, such children and issue of deceased children to take among them, per stirpes, the share of income which their parent would have taken if living. If, however, any of such grandchildren shall die during the continuance of the said trust without leaving children or issue of deceased children him or her surviving, then the share of the said grandchild so dying shall be held upon the same terms of trust and with the same remainders over as is herein provided for the share of my other grandchildren."

The proposed distribution divided C. Alexander DaCosta's one-third income share between his two natural children and excluded appellant. Appellant was notified of the accounting and of the proposed distribution plan but asserted no claim. The accounting was confirmed by decree nisi and then confirmed absolutely by pro forma decree on January 21, 1952. The payment of trust income has continued until this present accounting.[2]

As already stated, in 1972 this Court announced the rule that testamentary grants to "children" should be read to include adopted children unless the testator's intention to exclude adopted children clearly appears. *Tafel Estate*, supra; see *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978) (same rule for grants to "issue"). Occasioned by our decision in *Tafel*, the trustees of Henry Biddle's estate presented this accounting to the Orphans' Court Division of Chester County to determine whether appellant is entitled to share with his step-brothers in the income of the trust. Appellant appeared and claimed a right to participate in future income distributions. Appellant's step-brothers opposed his claim, urging that appellant was barred by the 1952 accounting.[3]

The orphans' court refused to entertain the merits of appellant's claim. The orphans' court acknowledged that appellant had never previously presented any claim to participate in this trust and that the court had never previously determined his right to participate. Nevertheless, the orphans' court, relying principally upon *Tower Estate*, 463 Pa. 93, 343 A.2d 671 (1975), believed that the 1952 accounting, of which appellant had notice but to which appellant did not object, barred his present claim. The orphans' court's re-

---

2. Trust payments are to end and the trust principal is to be distributed at the death of the last grandchild who was living at the time of Henry Biddle's death. One such grandchild is now living.

   Because of the death of a trustee, another accounting was filed in 1958. Appellant did not receive notice of this accounting and all parties agree that the accounting is not relevant to any present issue.

3. Because appellant and his step-brothers are both represented by counsel and because appellant seeks only prospective inclusion, the trustees have, properly, not taken any position on appellant's claim. See *Trusts of Holdeen*, 486 Pa. 1, 6 n.5, 403 A.2d 978, 980 n.5 (1979).

liance upon *Tower Estate,* however, was erroneous. In *Tower Estate,* a similar question of post-*Tafel* income was presented to this Court. There, the natural children asserted that a prior determination of this Court involving the same trust and excluding the adopted claimants made the adopteds' subsequent claim res judicata. Although the adopted children's right to future distributions was denied in that case on other grounds, a majority of this Court refused to hold the new claim barred by res judicata. As this Court pointed out in a decision after *Tower,* only two members of the six-member Court in *Tower* expressed the view that the doctrine of res judicata prohibited future payments to the claimants. *Estate of Flinn,* 479 Pa. 312, 323 n.3, 388 A.2d 672, 678 n.3 (1978).

The continuing refusal of a majority of this Court to adopt the res judicata rule is illustrated by *Fownes Estate,* 465 Pa. 182, 348 A.2d 416 (1975), where this Court, equally divided, affirmed an orphans' court award of post-*Tafel* trust income to an adopted child, despite a pre-*Tafel* decision by this Court involving the same trust and expressly excluding the adopted child. In no case since *Tafel* has a majority of this Court been willing to find that a pre-*Tafel* denial of benefits to an adopted child precludes that child from future participation in a trust.

Similarly, res judicata does not bar the claim of the present appellant. Appellant makes no claim to any trust income already distributed, rather he seeks only to participate in future distributions of income generated by the trust. Most importantly, he seeks to do so on the basis of a rule of law recently announced by this Court. In such circumstances, the appropriate and fair resolution is for the orphans' court to allow participation in income earned and distributed in the future.

■ It is well established that "[a] rule of law made in the distribution of a portion of an estate is not binding upon a court in a subsequent adjudication relating to another portion." *Estate of Flinn,* 479 Pa. 312, 323, 388 A.2d 672, 677 (1978) quoting *Arrott Estate,* 421 Pa. 275, 280, 217 A.2d

741, 744 (1966); accord, *Brown Estate*, 408 Pa. 214, 183 A.2d 307 (1962); *Kellerman's Estate*, 242 Pa. 3, 88 A. 865 (1913). A corollary of this principle, as this Court has held, is that "it [is] the duty of the auditing judge to require that the present allocation be controlled by the law in effect at the time of the audit." *Arrott Estate*, supra, 421 Pa. at 281, 217 A.2d at 745.

The application of these principles is appropriate here where the prior audit was based on a legal doctrine no longer followed. *Estate of Flinn*, supra, 479 Pa. at 323, 388 A.2d at 677; *Arrott Estate*, supra; *Reamer's Estate*, 331 Pa. 117, 200 A. 35 (1938). Our decision in *Tafel* established, without doubt, an important new rule of construction. More importantly, that decision was intended to insure for adopted children rights which for many years had unnecessarily been denied them. In such a circumstance fairness requires that our courts apply the new rule prospectively.

Our determination here is no more than an application of the result reached by this Court just one year ago in *Estate of DeRoy*, 481 Pa. 403, 392 A.2d 1355 (1978) (opinion announcing the judgment of the Court with one Justice specially concurring). In *DeRoy* income from a testamentary trust was to be paid to the testator's son for the son's life. On the son's death the trust principal was to be distributed to the son's children or their issue. In default of children or issue the son's wife was to take a life estate. On the wife's death the trust corpus was to revert to the testator's estate. In 1933 the son died without natural children, but left an adopted child. The orphans' court appointed a guardian ad litem for the child and held a hearing at which the principal question was the adopted child's right to the trust. Based on the then current law the court refused to distribute the trust to the adopted child and instead awarded the son's wife a life estate. Forty-five years later, on the occasion of the wife's death, the adopted child again sought to take the property. The orphans' court, like the orphans' court in the present case, refused to allow the adopted child to participate on the ground that the prior adjudication barred the

child's claim. This Court reversed. The opinion announcing the judgment of this Court in *DeRoy* relied upon the principle we have already recited that a ruling of law by the orphans' court in the distribution of a portion of an estate is not binding upon a subsequent adjudication relating to another portion of the estate. 481 Pa. at 409–410, 392 A.2d at 1358.

More importantly, *DeRoy* emphasized the unfairness of precluding the adopted child from the benefits of our decision in *Tafel*. *DeRoy* quoted with approval the Restatement of Judgments, § 70, Comment f (1948 Supp.) which provides that the determination of a question of law is not conclusive between the parties in a subsequent adjudication "if it would be unjust to one of the parties or to third persons to apply one rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons." As *DeRoy* explained

"It would obviously be unjust to apply [the rule of *Tafel Estate*] to adopted children other than appellant while adhering to the former rule when called upon to decide how the principal of the instant trust should be distributed."

481 Pa. at 410–11, 392 A.2d at 1358. We note that the tentative draft of the Restatement (Second) of Judgments retains this salutary principle in clear form. Section 68.1 (Tentative Draft No. 1) (1973) provides:

"§ 68.1 Exceptions to the General Rule of Issue Preclusion
    Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

                *    *    *    *    *    *

    (b) The issue is one of law and.  .  .  .
        (ii) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws  .  .  . . ."

The orphans' court should have been guided by this principle. Our decision in *Tafel* redressed a denial of rights which had persisted unnecessarily and unfairly for many years. Appellant's claim to future distributions of the trust income must be determined in the light of this important intervening change in the law.

■ We therefore reach the merits of appellant's claim. The natural children urge that the presumption that adopted children be included is inapplicable in this case because the language of Henry Biddle's will demonstrates his intention to exclude adopted children. This argument is completely meritless. Of course, if the language of testator's will disclosed testator's intention with reasonable certainty that intention would be controlling. *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978); *Estate of Flinn*, supra, 479 Pa. at 318–21, 388 A.2d at 675–76 (1978). The relevant portions of the will, however, simply use the words "children" and "issue." There is nothing in these words to indicate any clear intention one way or the other with regard to adopted children. See *Tafel*, 449 Pa. at 451, 296 A.2d at 802. Nor does the will, when read in its entirety, give any indication that the testator intended to exclude adopted children. The presumption in favor of adopted children therefore applies.

■ The natural children also urge that our decision in *Tafel* is not applicable to the 1923 Biddle will because *Tafel* was based on a construction of the Adoption Act of 1925, Act of April 4, 1925, P.L. 127, § 4, 1 P.S. § 4 (1963). We have previously rejected this argument in *Estate of Flinn*, supra, 479 Pa. at 320–21, 388 A.2d at 676 where we explained that *Tafel* and our subsequent cases were based on the Wills Act of 1917, Act of June 7, 1917, P.L. 403, § 16(b), 20 P.S. § 228 (1950). Thus this argument is equally without merit.[4]

4. We note that there has been litigation concerning separate property originating from the estate of testator's brother, W. Lyman Biddle. Testator's brother died in 1920, a resident of Montgomery County. His will left one-third of his residuary estate in trust, directing that the income be paid to his sister during her lifetime. On her death, one-half of the remainder of the trust was to go to testator, if living,

The decree of the Court of Common Pleas of Chester County, Orphans' Court Division, is reversed and this case is remanded for proceedings consistent with this opinion.

Each party pay own costs.

MANDERINO, J., did not participate in the decision of this case.

LARSEN and FLAHERTY, JJ., concur in the result.

EAGEN, C. J., and O'BRIEN, J., dissent.

and if not, to testator's issue as he might appoint, and in default of appointment to testator's issue outright. The sister died in 1937, and in *Biddle's Estate*, 333 Pa. 316, 5 A.2d 158 (1939), this Court held that item SIXTH of testator's will validly exercised the power of appointment granted him by his brother Lyman. This separate fund continues to be administered by the Montgomery County Court of Common Pleas, Orphans' Court Division.

The record indicates that in 1950 appellant sought to participate as an income beneficiary of this Montgomery County trust. The Orphans' Court of Montgomery County denied appellant's claim. Appellant took timely exceptions to that decree, but his exceptions were dismissed and the orphans' court decree was made final on February 27, 1951. Appellant did not file any appeal.

The record further indicates that appellant has recently sought, based on *Tafel*, to participate in future income distributions of the Montgomery County property. The orphans' court there refused to allow appellant to participate on the ground of res judicata. Appellant took timely exceptions to the Montgomery County decree nisi, which were dismissed, and then appealed the Montgomery County decree to this Court. That appeal, however, has been discontinued.

Appellant's entitlement to any portion of the Montgomery County property is not before us and we express no view on that claim.

We agree with the Orphans' Court Division of Chester County, however, that the Montgomery County litigation, as it involves a distinct and separate fund from a separate estate should not preclude the present auditing court from now applying the correct rule of law to future distributions of the Chester County property. Rights to a distinct piece of property are not determined by a judgment concerning another piece of unrelated property. *Estate of Flinn*, 479 Pa. 312, 323, 388 A.2d 672, 677–78 (1978); see Restatement of Judgments § 89, Comment e (1942) (effect of judgment limited to property litigated).