533 A.2d 1015

**In re ESTATE OF Abram NESBITT, Deceased. (Two Cases)**

**Appeal of Abram NESBITT, III, Natural Son of Abram Nesbitt, 2nd. (Two Cases)**

Superior Court of Pennsylvania.

Argued Jan. 27, 1987.

Filed Sept. 24, 1987.

Reargument Denied Sept. 24, 1987.

Frank Townend, Wilkes–Barre, for appellant.

Before CAVANAUGH, OLSZEWSKI and MONTEMURO, JJ.

MONTEMURO, Judge:

This consolidated appeal arises from an order of the Court of Common Pleas of Luzerne County, Orphans' Court Division, denying appellant's exceptions to a decree *nisi* entered May 14, 1986. The order, dated June 19, 1986, made final the decree *nisi* which found appellees to be proper heirs and beneficiaries under three trusts established by two different wills. We affirm in part and reverse in part.

The three trusts involved in this appeal were established under the wills of Abram Nesbitt and Abram G. Nesbitt, who died in 1920 and 1926, respectively. Abram G. Nesbitt was the unmarried and childless son of Abram Nesbitt. Appellant is the natural son of Abram Nesbitt's grandson, Abram II. Appellees are the adopted children of Abram Nesbitt's other grandson, Samuel. [See "Nesbitt Family Tree" Exhibit "A" of this opinion.]

In 1919, Abram Nesbitt adopted his two minor grandsons after the death of their mother, Sarah Nesbitt Smythe. After adoption, the boys' names were changed to Abram Nesbitt II and Samuel Nesbitt. Abram Nesbitt died in 1920, survived by his unmarried and childless son, Abram G. Nesbitt and by his two adopted sons (grandsons), Abram II and Samuel.[1] In March, 1922, following the death of Abram Nesbitt, Abram II and Samuel were adopted for a second time, this time by Abram G. Nesbitt. Abram G. Nesbitt died in 1926, survived by his two adopted sons, Abram II and Samuel. Abram II died in 1982, survived by his natural son, appellant Abram Nesbitt, III. Samuel died in 1984 survived by his three adopted children, appellees Marie Lynch Nesbitt Stefenhagens, Samuel Nesbitt, Jr., and Frank McCormick Nesbitt.

Abram Nesbitt's will, executed on April 20, 1919, created a trust for his minor grandsons Abram II and Samuel. Article Third of the will established a residuary trust for

---

1. Abram Nesbitt was also survived by a granddaughter, but for the purposes of this consolidated appeal, we are concerned only with Abram Nesbitt's son and adopted sons (grandsons).

the maintenance and education of his "grandsons" until they reached age twenty-five. Thereafter, each would receive one half of the income and interest from the fund for life. The clause of the will now in issue provides that

> [a]t the death of either or both of these grandsons leaving *child or children* or the *issue* of child or children him or them surviving all the said Fund including the accumulations so held shall descend to and vest absolutely in such *child or children* or the *issue* thereof taking the share of the parent (emphasis added).

Appellant contends that appellees, the adopted children of Samuel Nesbitt, should not receive any share of the Fund because it was not Abram Nesbitt's testamentary intent that they should share in his bounty.

Abram G. Nesbitt's will, executed on April 1, 1922, established a residuary trust for the maintenance and education of his "two adopted sons," Abram Nesbitt II and Samuel Nesbitt, until they reached thirty years of age. At that time, each would receive one half the interest or income from the fund for life. On June 5, 1923, Abram G. Nesbitt executed a codicil to his will wherein he established another trust, the "Bank Stock Trust," subject to the same terms and for the same uses as the residuary trust. The clause of the will controlling both trusts that is now at issue states that:

> [f]rom and after the decease of either of my said adopted sons, *leaving child or children,* or issue of child or children, him surviving, and until twenty-one years after the decease of the survivor of my said adopted sons, to divide the net income arising from said residuary estate and accumulations into as many parts or shares as, at the time of each semi-annual or other convenient distribution of income, there shall be an adopted son of mine then alive, and an adopted son of mine then dead, represented by *descendants* then alive, or an adopted son or sons of mine then dead, represented by *descendants* then alive, and to subdivide the share falling to each set of *descendants* of an adopted son of mine then dead, amongst them

per stirpes upon the principle of representation, and to pay over at each of said times of semi-annual or other convenient distribution, unto each adopted son and *descendant* of an adopted son who shall thus be found entitled, his or her share of said income.

Article Third, ¶ 4 (emphasis added). Appellant contends that appellees should not receive any income under either of the trusts because the words used by testator Abram G. Nesbitt evidenced an intent to exclude appellees, as adopted children, from sharing in the trusts.

Due to the death of Samuel Nesbitt, the last surviving grandson of Abram Nesbitt, the trustee of the Abram Nesbitt residuary trust filed its "Eighth and Final Account" on July 26, 1985. The trustee asked the court whether "principal and income of the trust is to be distributed to the adopted children of Samuel Nesbitt [appellees] or the natural son of Abram Nesbitt, 2nd [appellant]." On that same date, the trustee of the Abram G. Nesbitt residuary trust filed its "Seventh and Partial Account" with a petition for adjudication on the question of whether the trust income "is to be distributed to the adopted children of Samuel Nesbitt [appellees] or the natural son of Abram Nesbitt, 2nd [appellant]." On November 27, 1985, the trustees of the Bank Stock Trust filed their "First and Partial Account."

The parties filed stipulations concerning the trusts. The Luzerne County Orphans' Court conducted an evidentiary hearing, rendered its adjudication and issued a decree nisi. The decree stated that appellees were beneficiaries under all three trusts. The court denied appellant's subsequent exceptions and, on June 19, 1986, adopted the decree *nisi* as the final decree. Notices of appeal from the adjudications were timely filed. We consolidated these matters for appeal because they raise identical issues:

(1) Are appellees, the adopted children of Samuel Nesbitt, the proper beneficiaries and/or remaindermen of the three trusts established under the wills of Abram and Abram G. Nesbitt?

(2) Did the court err when it excluded evidence and testimony concerning the lives and careers of the testators?

(3) Did the court err when it excluded evidence offered to prove estoppel against appellees' claims?

(4) Did the court err when it directed the trustee of the three trusts to file accounts instead of approving or modifying the accounts already filed by the trustee?

We will address these issues *seriatim.*

We first note that "[i]n reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error.... [W]e are not limited when we review the legal conclusions that [the] Orphans' Court has derived from [its findings of fact]." *In re Estate of Ketcham,* 343 Pa.Super. 534, 538, 495 A.2d 594, 596 (1985).

Appellant first questions whether appellees, as adopted children, are proper beneficiaries and/or remaindermen under the three trusts established under the wills of Abram and Abram G. Nesbitt. In 1972, our supreme court handed down its decision in *In re Tafel Estate,* 449 Pa. 442, 296 A.2d 797 (1972) (plurality), wherein it enunciated the rule that there is a presumption "that a testator, in the absence of any *expressed* intention in the will to the contrary, intended to treat adopted children in the same manner as natural children and to *include* in the testamentary words "child" or "children" an adopted child regardless of the date of his or her adoption." *Id.,* 449 Pa. at 453–54, 296 A.2d at 803 (emphasis in original).[2] The court stated that such a "rule does not preclude nor prevent any testator who desires to distinguish between natural and adopted children as recipients of his bounty from doing so; an expression of such intent *in his will* accomplishes that result." *Id.,* 449 Pa. at 452, 296 A.2d at 802 (emphasis added). Prior to the enunciation of the *Tafel* rule, our case law had held that in

**2.** The rule in *Tafel* "applies where the adoptee or adoptees at the time of the adoption were minors and not adults and does not apply where an adoptee or adoptees was or were adults at the time of the adoptions." 449 Pa. at 454, 296 A.2d at 803.

the absence of any testamentary language demonstrating the testator's intent to the contrary, it was presumed that when the testator made a bequest to "child" or "children," he intended to exclude adopted children. See *Tafel Estate, supra*, 449 Pa. at 445, 296 A.2d at 803.

The rule in *Tafel* has been expanded and affirmed in subsequent decisions. In *Estate of Riley*, 498 Pa. 395, 446 A.2d 903 (1982), wherein the supreme court affirmed a decree allowing two adopted children of one of the testator's grandchildren to share in the trust principal, the court stated:

> Where, as here, a testator has expressed no clear intent with regard to adopted children and directs only that a distribution be made to "issue," it is a settled canon of construction that the testator intended to include adopted children within his bounty. *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978) (bequest to "issue" presumed to include adopted children); *Estate of Sewell*, 487 Pa. 379, 409 A.2d 401 (1979) (same). See *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972) (adopted children permitted to take under bequest to testator's "children"); *Estate of Flinn*, 479 Pa. 312, 388 A.2d 672 (1978) (bequest to "children" of testator's children presumed to include adoptees); *Estate of DeRoy*, 481 Pa. 403, 392 A.2d 1355 (1978) (adopted child permitted to take under bequest to "children" of testator's children); *Estate of Biddle*, 487 Pa. 616, 410 A.2d 782 (1980) (adopted child permitted to take under bequest to "children and issue" of testator's grandchildren). See also *Farmers Trust Co. v. Bashore*, [498 Pa. 146, 445 A.2d 492 (1982)] (conveyance to "children" of settlor's children in inter vivos trust presumed to include adoptee).

498 Pa. at 397–98, 446 A.2d at 904–05. *See also Estate of Ogden*, 353 Pa.Super. 273, 509 A.2d 1271 (1986) ("heirs of their body" and "children of the body" presumed to include adoptees). Furthermore, even before its decision in *Tafel*, our Supreme Court had held that the testamentary word

"descendant" included adoptees. *See Collin's Estate,* 393 Pa. 195, 142 A.2d 178 (1958).

■ We now turn to the Nesbitt wills and conclude that the rule in *Tafel* applies. In the absence of a clear expression *in the instrument* to the contrary, adoptees are embraced within general designations such as "children" and "issue." Abram Nesbitt's will instructs that the principal from the testamentary trust should be distributed to the "child or children" of his grandsons. Because the will contains no expressed intention to treat adopted children different from natural children, we find that appellees, the adopted children of testator's grandson, are entitled to recover under the will of Abram Nesbitt.

■ With regard to Abram G. Nesbitt's will, appellant argues that the will is not neutral concerning distributions to adopted children. Because testator used the word "adopted" nineteen times when referring to his adopted sons, but never used the word when referring to children or descendants, appellant contends that "this fact provides the clear implication *in* the will that adopted children of his adopted sons are to be excluded." Appellant's Brief, *Estate of Abram G. Nesbitt* and *In re Estate of Abram G. Nesbitt* (consolidated) at 16. We reject this argument. *Tafel* requires an expressed intention in the will to exclude adopted children. There is no such clear expression in Abram G. Nesbitt's will. The more logical implication to be drawn from Abram G. Nesbitt's use of the word "adopted" when referring to his adopted sons is that he was striving for clarity and used the word for identification only. We refuse to find in the use of the word a clear intent to exclude adopted children. Because there is no clear expression in the will excluding adopted children, we apply the rule in *Tafel* and find that appellees are included in Abram G. Nesbitt's scheme of distribution.

Appellant next argues that evidence concerning the lives and careers of the testators was improperly excluded by the trial court. He asserts correctly that at the time these two wills were executed, if a will did not clearly include adopted

children in the distributory scheme, then there was a presumption that they were excluded. Appellant argues that the proffered evidence, paragraph 13 of the Stipulations,[3] is

**3.** Evidence offered concerning the life and career of Abram Nesbitt was as follows:

Abram Nesbitt, who was born in Plymouth, Pennsylvania, December 30, 1831, started working as a surveyor. After three years of association with his brother-in-law, Samuel Hoyt, he practiced as a surveyor from 1852 until 1864. In 1863 he was one of the organizers of the Second National Bank of Wilkes–Barre, Pennsylvania. He was a Director of the Bank until 1871 when he became Vice-President. In 1877 he became President of that Bank and served as President for 53 [sic] years until his death in 1920. That bank is now the First Eastern Bank of Pennsylvania. In 1884 he helped organize and then served as a Director and Officer of the Wyoming Valley Coal Company. In 1887 he helped organize the Spring Brook Water Company, and remained a Director of that company and its successors until his death. In 1898 he was chosen President of the new Gas Company of Luzerne, which was formed by a combination of the Wilkes–Barre Gas Company and the Consumers Gas Company. In 1909 he became President of the Wilkes–Barre Railway Company, a combination of the various local traction companies in the area.

He was a trustee of Wyoming Seminary from 1863 until his death and gave the Seminary the building which housed the Science and Fine Arts departments. He was a trustee of the Kingston Methodist Episcopal Church. For a time he was a member of the council of the Borough of Kingston, Pennsylvania.

In 1912 a group led by Dr. D. H. Lake, persuaded him to establish the Nesbitt West Side Hospital (now the Nesbitt Memorial Hospital in Kingston). He purchased the Jacob Sharps property and other land in Kingston for the hospital, which now is a 210-bed hospital operating on that site.

Stipulation, December 10, 1985, ¶ 13, *Estate of Abram Nesbitt.*

Evidence offered concerning the life and career of Abram G. Nesbitt was as follows:

Abram G. Nesbitt, born November 18, 1866, was the third son of Abram Nesbitt, a very successful businessman and philanthropist. He never married. He worked closely with his father in various business enterprises. When his father died in April, 1920, he became President of the Second National Bank of Wilkes–Barre and held that position until his death. He bought control of the Powers Accounting and Tabulating Corporation and merged that with the Wales Adder Machine Company to keep the business in Wyoming Valley. That business was sold after his death to the Remington Rand Corporation. He continued the philanthropy of his father. He completed the arrangements for Nesbitt Field, the athletic facility of Wyoming Seminary, which had been started by his brother George. He made possible an entire new set of buildings for the Nesbitt Memorial Hospital.

Stipulation, December 10, 1985, ¶ 13, *Estate of Abram G. Nesbitt.*

relevant because it would prove that the testators were experienced businessmen who understood the meaning of their testamentary words and intended to exclude adopted children of others from sharing in the trusts.

■ We reject appellant's argument and agree with the trial court's conclusion that

[i]n essence, counsel would have us ignore the mandates of *[Tafel] Estate* as [enunciated] by the Supreme Court of Pennsylvania and reinstate a presumption to exclude adopted children by presuming that the learned testator would have presumably known the law. This tortured line of reasoning is not legally permitted.

Trial Court Opinion at 4. *See also In re Estate of Ketcham*, 343 Pa.Super. 534, 539, 495 A.2d 594, 597 (1985) ("the canon of construction adopted in *Tafel* applies, irrespective of any prior presumptions in the law regarding adoption"). Because no ambiguity of language existed in the wills concerning an intention to treat adoptees different from natural children, the trial court properly excluded the extrinsic evidence. Under such circumstances, the canon of construction from *Tafel* is applied: we presume that when the testator made a bequest using such general designations as "children" or "issue," adoptees are embraced within that language.

Extrinsic evidence might have been properly admitted had we concluded in our discussion above that there existed in Abram G. Nesbitt's will language that at least created an ambiguity regarding the question of testator's intent as concerns adopted children. *See, e.g., Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978) (will gave testator's niece power to appoint *blood relatives* of testator or herself or, failing that, to distribute the corpus to the *issue* of testator's niece). Where a will is ambiguous concerning testamentary intent, a court may find it necessary to examine "the scheme of distribution, the circumstances surrounding execution of the will and other facts bearing on the question [of intent]." *Id.*, 477 Pa. at 257, 383 A.2d at 921. The testator's intent must appear with reasonable certainty such

that there is "little doubt of his intent," *id.* "If, from the language of the document, the scheme of distribution, and the relevant facts and circumstances, a court cannot determine a testator's intent with reasonable certainty, it must resort to canons of construction." *Id.* (citations omitted).

However, in the case before us, the extrinsic evidence that appellant seeks to introduce, Paragraph 13 of the Stipulations, is not relevant to the question of testator's intent. The evidence is only a general statement highlighting some of the testators' business and philanthropic accomplishments. The stipulations do not make it more probable that the testators knew the legal significance of their testamentary words. Even if the evidence did support the proposition for which appellant seeks to have it admitted, the evidence would not conclusively prove the testators' intent with reasonable certainty. Therefore, the *Tafel* canon of construction would be applied in any event,[4] and appellees would be included as trust beneficiaries. *See Estate of Sykes, supra.*

■ Appellant next asserts that the orphans' court improperly excluded evidence and testimony offered to show that appellees were estopped from making their claims under the wills. We find this argument without merit. Appellant sought to have evidence admitted that would prove that because the trustees and the representative of Samuel Nesbitt believed that the adopted Nesbitt children would not succeed to their adoptive father's share in the trusts established under the Nesbitt wills, from 1927 to at least 1971, trust investments were made in income-producing rather than growth stocks. Such evidence is irrelevant

**4.** We dismiss appellant's argument that the rule in *Tafel* should not be applied "retroactively" to wills drafted in 1919 and 1922. He asserts that it is repugnant to our legal system to apply a change in law, precipitated by a 1972 court decision, to the Nesbitt wills. The supreme court rejected a similar argument in *Estate of Flinn,* 479 Pa. 312, 388 A.2d 672 (1978) (will drafted in 1923). The court stated that the analysis in *Tafel* was based upon an interpretation and reevaluation of section 16(b) of the Wills Act of 1917. The act was in effect when the Nesbitt wills were executed.

to a claim of estoppel against appellees and was properly excluded.

Estoppel is a flexible doctrine that is applied or denied as the equities between the parties demand. *Straup v. Times Herald,* 283 Pa.Super. 58, 423 A.2d 713 (1980). Reduced to its essence, equitable estoppel "is a doctrine of fundamental fairness designed to preclude a party from depriving another of a reasonable expectation *when the party inducing the expectation* ... knew or should have known that the other would rely upon that conduct to his or her detriment." *Commonwealth ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 312, 369 A.2d 416, 418 (1976) (emphasis added). The doctrine has two essential elements: inducement and justifiable reliance on that inducement. *See Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983). Moreover, "[t]he gist of estoppel ... is a misrepresentation." *Murphy v. Burke,* 454 Pa. 391, 398, 311 A.2d 904, 908 (1973) (emphasis deleted).

The evidence offered by appellant to prove estoppel lacks the essential element of inducement by appellees to cause appellant to act or forbear to act in a particular manner. The understanding of appellees' father concerning the exclusion of his adopted children from sharing in the funds under the wills and actions taken by him pursuant to that understanding cannot form the basis of an estoppel against appellees' present claims. Nor can appellant's disappointed expectations in these matters support a claim of estoppel. Appellees have taken no actions contrary to their rights under the wills, *but cf. In re Mintz' Trust,* 444 Pa. 189, 282 A.2d 295 (1971) (beneficiary could not complain about a transaction where certain shares were sold by her trustees after she signed an agreement assenting to such a transaction), nor have they caused appellant to change his position in reliance on *their* inducement.[5]

5. We find unpersuasive appellant's argument that he was prejudiced as a result of the investment decisions made allegedly to favor the appellees, the adopted children of Samuel Nesbitt. It would appear that pursuant to the terms of the trusts that equal income distributions were made to Samuel and Abram II. Subsequent to the death of

Finally, both parties agree that no new accounts with regard to the three trusts need be filed. The orphans' court, however, in its decree *nisi* and in its final decree ordered accounts to be filed consistent with its decision. Appellant took exception to the order for new accountings but the court never addressed the issue. We, therefore, do not have before us the court's rationale for requiring new accounts to be filed.

Because the court's decision that appellees should be included in distributions under the trusts does not invalidate the prior accounts, we reverse only that part of the orphans' court decree that requires the trustees to file new accounts. We reach this conclusion because we are persuaded that none of the parties wants a new accounting, and a trustee's duty to keep clear and accurate accounts is owed to the trust's beneficiaries. Restatement (Second) of Trusts § 172 (1959)

Affirmed in part, reversed in part.

Abram II in 1982, appellant received his father's share of the income. We fail to see how appellant has suffered from this arrangement.